**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WELLS FARGO ADVISORS LLC,

                Petitioner,

                v.

REAGAN TUCKER, BENJAMIN DOOLEY,
and MARVIN GLASGOLD,

                Respondent.

Civil Action No. 15-cv-07722 (ALC)

---

**MEMORANDUM OF LAW IN SUPPORT**
**OF PETITION TO DISMISS OR IN THE ALTERNATIVE STAY THE PENDING**
**ARBITRATION AND COMPEL INDIVIDUAL ARBITRATION IN ACCORDANCE**
**WITH THE BINDING ARBITRATION AGREEMENTS**

MORGAN, LEWIS & BOCKIUS LLP
Kenneth J. Turnbull
Ashley Hale
101 Park Avenue
New York, NY 10178
212.309.6000
212.309.6001 (fax)
kturnbull@morganlewis.com
ahale@morganlewis.com

*Attorneys for Petitioner*
*Wells Fargo Advisors LLC*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   RELEVANT BACKGROUND ................................................................................2

    A.    Respondents' Employment Agreements With Wells Fargo...................................2

    B.    Respondents File For Arbitration ........................................................................3

    B.    Respondents Are Putative Members Of A Previously Filed Collective Action Pending In The Northern District of Illinois ...............................................4

III. ARGUMENT .........................................................................................................5

    A.    The Court, Rather Than An Arbitrator, Must Decide Whether Respondents' Arbitration Agreements Authorize Class Or Collective Arbitration Because Whether They Do Is A Gateway Question Of Arbitrability ....................................................................................................5

    B.    Respondents Must Arbitrate Their Individual Claims Against Wells Fargo On An Individual Basis Because Their Arbitration Agreements Do Not Authorize Class Or Collective Arbitration ............................................................8

    C.    The Procedural "Fall Back" To AAA Is Not Implicit Consent To Arbitration On A Class or Collective Action Basis ……………………………12

    D.    Even In The Absence Of The Agreements, This Court Must Dismiss Or Stay The Pending Arbitration Due To The Previously Filed Collective Action Pending In The Northern District of Illinois……………………………14

IV.   CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009) ............................................................... 10

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ............................................. 15

*Anwar v. Fairfield Greenwich Ltd.*,
  950 F. Supp. 2d 633 (S.D.N.Y. 2013) ...................................... 5, 11

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ...................................................... 8, 9, 14

*Chassen v. Fidelity Nat'l Fin., Inc.*,
  No. 09-291, 2014 WL 202763 (D.N.J. Jan. 7, 2014) ...................... 6

*Chen-Oster v. Goldman, Sachs & Co.*,
  785 F. Supp. 2d 394 (S.D.N.Y. 2011) ..................................... 5, 11

*Cohen v. UBS Fin. Servs., Inc.*,
  No. 14-781, 2015 WL 3953348 (2d Cir. June 30, 2015) .................. 13

*Contec Corp. v. Remote Solution Co.*
  398 F.3d 205 (2d Cir. 2005) ....................................................... 7

*Corrigan v. Domestic Linen Supply Co.*,
  No. 12-0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) ............ 6, 12

*Emilio v. Sprint Spectrum L.P.*,
  508 F. App'x 3 (2d Cir. 2013) ................................................... 7, 8

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008) ..................................................... 14

*Eshagh v. Terminix Int'l Co. L.P.*,
  588 F. App'x 703 (9th Cir 2014) ............................................. 5, 11

*Fensterstock v. Educ. Fin. Partners*,
  611 F.3d 124 (2d Cir. 2010) ..................................................... 10

*Garden Fresh Rest. Corp. v. Superior Court*,
  231 Cal. App. 4th 678 (2014) ..................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

*Goodale v. George S. May Int'l, Co.*,
  No. 10- 5733, 2011 WL 1337349 (ND. Ill. Apr. 5, 2011)......................................................12

*Hickey v. Brinker Int'l Payroll Co. L.P.*,
  No. 13- 00951, 2014 WL 622883 (D. Col. Feb. 18, 2014) ...................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...................................................................................................................5

*James v. AT&T Corp.*,
  334 F. Supp. 2d 410 (S.D.N.Y. 2004) ...................................................................................15

*Martinez v. Leslie's Poolmart, Inc.*,
  No. 14-01481, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014) ...............................................11

*Nelsen v. Legacy Partners Residential, Inc.*,
  207 Cal. App. 4th 1115 (2012)..............................................................................................11

*Opalinski v. Robert Half Int'l Inc.*,
  761 F.3d 326 (3d Cir. 2014) ...............................................................................................6, 7

*Parisi v. Goldman, Sachs & Co.*,
  710 F.3d 483 (2d Cir. 2013) ..............................................................................................7, 13

*Parvataneni v. E*Trade Fin. Corp.*,
  967 F. Supp. 2d 1298 (N.D. Ca. 2013)....................................................................................6

*Reed Elsevier, Inc. v. Crockett*,
  734 F.3d 594 (6th Cir. 2013)..........................................................................................5, 6, 10

*Sanders v. Forex Capital Mkts., LLC*,
  No. 11-0864, 2011 U.S. Dist. LEXIS 137961 (S.D.N.Y. Nov. 29, 2011) ..............................7

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .........................................................................................................passim

*Sutherland v. Ernst & Young LLP*,
  768 F. Supp. 2d 547 (S.D.N.Y. 2011) ...................................................................................11

*Thomas v. Right Choice Staffing Grp., LLC*,
  No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015)...............................................12

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

29 U.S.C. § 4 ...................................................................................................................1, 4

9 U.S.C.A. § 1, et seq. ....................................................................................................1, 8, 9

**OTHER AUTHORITIES**

FINRA Rule 13204......................................................................................................4, 13, 14

Petitioner Wells Fargo Advisors LLC ("Wells Fargo" or "Petitioner") hereby submits this Memorandum of Law in support of its Petition To Dismiss or in the Alternative Stay the Pending Arbitration and Compel Individual Arbitration in Accordance With the Binding Arbitration Agreements, pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 1, et seq. ("FAA").

## I.   PRELIMINARY STATEMENT

Respondents Reagan Tucker ("Tucker"), Benjamin Dooley ("Dooley") and Marvin Glasgold ("Glasgold") (collectively the "Former Employees" or "Respondents") are former employees of Wells Fargo who seek to assert overtime claims against Petitioner stemming from their employment as New Financial Advisors at Wells Fargo.  The Former Employees each signed a "New Financial Advisor Training Agreement" ("Agreement") that requires them to arbitrate any employment claims each may have against Wells Fargo on an individual basis.  The Respondents, however, are seeking to arbitrate their overtime claims in a manner that breaches their agreements, by asserting their overtime claims on a class and collective action basis. Because their Agreements lack any provisions authorizing arbitration on a class or collective action basis, the Respondents must arbitrate their individual claims on a non-class and non-collective action basis in accordance with binding Supreme Court precedent.

The FAA empowers this Court to compel arbitration in the manner provided for under the applicable arbitration agreement.  29 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement.").  Because the Former Employees seek to proceed in arbitration in a manner that breaches their arbitration agreements, Wells Fargo respectfully requests that the Court dismiss, or in the alternative stay, the pending arbitration at AAA and order each of the Respondents to arbitrate his individual claims against Wells Fargo on a non-

class and non-collective action basis.[1]

## II.   **RELEVANT BACKGROUND**

### A.   **Respondents' Employment Agreements With Wells Fargo**

Respondents are former Wells Fargo financial advisors who worked at various branch offices in New York and Texas between July 2011 and August 2013.  *See* Petition at ¶¶ 10 – 12.  In consideration for their employment, each Respondent executed a New Financial Advisor Training Agreement.  Under the Agreements, in exchange for Wells Fargo's acceptance and evaluation of Respondents' applications for employment and its hiring of Respondents, Respondents agreed to arbitrate "any controversy or dispute" with Wells Fargo.  (Copies of the Agreements are attached to the Declaration of Kenneth J. Turnbull in Support of Petition To Dismiss or in the Alternative Stay the Pending Arbitration and Compel Individual Arbitration in Accordance With the Binding Arbitration Agreements ("Turnbull Decl.) at Exhibits ("Exs.") A – C.)[2]

Paragraph 14 of the Agreements provides in relevant part:

> you agree that any controversy or dispute, including but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Wells Fargo Advisors, shall be submitted for arbitration before FINRA.  If the FINRA does not accept the controversy, dispute or claim, or any portion thereof, then the non-accepted controversy, dispute or claim shall be submitted for

---

[1] Even in the absence of the Agreements, this Court must dismiss or stay the pending arbitration.  Under the "first filed rule," discussed further below, this Court should dismiss or stay the arbitration because the claims in the arbitration substantially overlap with the claims asserted in *Williams v. Wells Fargo Advisors*, and *Williams* was filed first.  *See infra*, § III(D).

[2] Redactions have been made to non-relevant portions of the Agreements containing sensitive information.

> arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules, effective May 1, 1993.

The Agreements contain provisions that contemplate that disputes will be resolved between the individual employee and Petitioner on an individual basis, and leave no room for arbitration on a class or collective action basis.  Nowhere do the Agreements state that the Respondents may resolve their disputes on a class or collective basis.  To the contrary, the provisions emphasize that arbitration is a bilateral agreement with each former employee to arbitrate his claims on an individual basis.  The Agreements provide: "*[y]ou* are agreeing to arbitrate any dispute, claim or controversy that may arise between *you* and *your firm* …," "[t]his means that *you* are giving up the right to sue in court …," "[n]othing in this Agreement prevents *you* from filing a charge . . . with . . . the EEOC," "*you* agree your claim will become subject to arbitration as noted," "*you* may not assign this Agreement," and "[t]his Agreement is binding on *you, your heirs, administrators and executors . . .*"  Turnbull Decl., Ex. A – C at ¶ 14 (emphasis added).

## B.    Respondents File For Arbitration

Respondents do not dispute that their claims are covered by a valid, enforceable, binding arbitration agreement, as on July 23, 2015, Respondents filed identical, putative class action Statements of Claim with the Financial Industry Regulatory Authority ("FINRA") and the American Arbitration Association ("AAA"), seeking unpaid overtime from Petitioner under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  *See* Turnbull Decl., Exs. D – E.  According to the Statements of Claim, Respondents worked at Wells Fargo branch offices, worked over 40 hours in some weeks, and were "unlawfully denied . . . pay for overtime hours they worked in violation of the FLSA and state wage and hour laws," in part because they were misclassified as exempt employees.  Exs. E at ¶¶ 3 – 4.  Respondents seek to

represent all "other similarly situated current and former" financial advisors nationwide in their arbitration and proceed on a class wide basis. *Id.* ¶ 2.

Respondents filed in both forums because they "anticipate[d] that FINRA will not administer [the arbitration] because it is a class action." Turnbull Decl. Ex. D, p. 1. Under FINRA Rules 13024(a)(1) and (b)(1), even the mere mention of the word "class" or "collective" – regardless of whether or not the arbitration agreement at issue permits class or collective action arbitration – will result in FINRA rejecting the arbitration. As such, without even looking to see if the parties' Agreements permitted class or collective arbitrations, FINRA did not accept the dispute. Respondents simply uttered the "magic words" and their claims are now before AAA. Pursuant to Section 4 of the FAA, 29 U.S.C. § 4, Wells Fargo moves to compel each Former Employee to arbitrate his or her individual claims consistent with the terms of the Agreements – individually at AAA.

## C. Respondents Are Putative Members Of A Previously Filed Collective Action Pending In The Northern District of Illinois

Petitioner notes that on March 20, 2014, plaintiff Erika Williams, a former Wells Fargo employee, filed a putative class and collective action complaint against Wells Fargo Advisors LLC in the Northern District of Illinois. *See* N.D. Ill. Case No. 14-1981 ("*Williams*"), Dkt. No. 1, Turnbull Decl. Ex. F. Like Respondents, Plaintiff Williams has alleged, *inter alia*, that she was not exempt from the FLSA and did not receive at least one and a half times her normal rate of wages for hours that she worked in excess of 40. Id. ¶¶ 43 – 44. Plaintiff Williams asserted a claim for overtime under the FLSA, and seeks to proceed as a nationwide collective action on behalf of all similarly situated "eligible, nonexempt" employees that Wells Fargo employed in its branch offices. Id. ¶ 18. Accordingly, Respondents are putative members of the *Williams* collective action.

4

III.   **ARGUMENT**

A.   **The Court, Rather Than An Arbitrator, Must Decide Whether Respondents'
Arbitration Agreements Authorize Class Or Collective Arbitration Because
Whether They Do Is A Gateway Question Of Arbitrability**

Whether an arbitration agreement authorizes class or collective action arbitration is a

gateway question of arbitrability that a court must decide.  Gateway questions address issues that

contracting parties would expect a court to determine, such as whether the parties have a valid

arbitration agreement at all or whether a concededly binding arbitration clause applies to a given

controversy.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Reed Elsevier, Inc.

v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013), *citing Green Tree Fin. Corp. v. Bazzle*, 539 U.S.

444, 452 (2003) (plurality opinion).  Gateway questions are "fundamental to the manner in which

the parties will resolve their dispute[s]."  *Reed Elsevier,* 734 F.3d at 598.

Numerous courts within and outside this Circuit have held that the question of whether an

arbitration agreement is susceptible to class arbitration is a gateway question of arbitrability for

the court to decide.  Most recently, the Ninth Circuit affirmed a district court order striking the

plaintiff's class claims before compelling arbitration on the grounds that "[i]ssues that

'contracting parties would likely have expected a court to have decided' are considered 'gateway

questions of arbitrability' for  courts, and not arbitrators, to decide.'"  *Eshagh v. Terminix Int'l

Co. L.P.,* 588 F. App'x 703, 704 (9th Cir 2014).  Similarly, this Court has expressly held that this

gateway issue is for the court to decide.  *See e.g.*,  *Anwar v. Fairfield Greenwich Ltd.*, 950 F.

Supp. 2d 633 (S.D.N.Y. 2013) (holding that a "gateway dispute," such as whether class

arbitration is precluded due to the absence of such a provision in the arbitration agreement, is a

"question of arbitrability for a court to decide.")(citations omitteed); *Chen-Oster v. Goldman,

Sachs & Co.*, 785 F. Supp. 2d 394, 403-05 (S.D.N.Y. 2011) *rev'd sub nom. on other grounds,

Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013) (court decided the question of

arbitrability where the arbitration agreement – which called for arbitration before the NYSE or

NASD in the first instance, or the AAA (in accordance with the AAA's commercial arbitration

rules) if the NYSE or NASD declined to arbitrate - did not clearly and unmistakably delegate

that question to the arbitrator); *Corrigan v. Domestic Linen Supply Co.*, No. 12-0575, 2012 WL 2977262, at *4-5 (N.D. Ill. July 20, 2012) ("It is for courts, not arbitrators, to decide whether class claims are able to proceed").

Numerous other courts have expressly held that whether an arbitration agreement permits classwide arbitration is "a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Reed Elsevier*, 734 F.3d at 598-99 (quoting *Howsam*, 537 U.S. at 83); *see also Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 329 (3d Cir. 2014) ("Because of the fundamental differences between classwide and individual arbitration, and the consequences of proceeding with one rather than the other, we hold that the availability of classwide arbitration is a substantive 'question of arbitrability' to be decided by a court absent clear agreement otherwise."); *see also Chassen v. Fidelity Nat'l Fin., Inc.*, No. 09-291, 2014 WL 202763, at *6 (D.N.J. Jan. 7, 2014) (finding issue of class-wide arbitration a "gateway" issue for the court).  Indeed, as the Sixth Circuit stressed, whether the parties have agreed to arbitrate on a class or collective basis is a question that "is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally." *Reed Elsevier,* 734 F.3d at 599.  Thus, absent clear and unmistakable evidence otherwise, whether Respondents may arbitrate their claims against Petitioner on a class or collective action basis is a question of arbitrability for this Court to decide.  *Id.* at 598 (the Supreme Court "has given every indication, short of an outright holding, that classwide arbitrability is a gateway question" for a judge to decide).

Courts have extended this rule to FLSA collective actions, in addition to Rule 23 class actions.  *See*, *e.g.*, *Opalinski, supra,* 761 F.3d at 329 (holding that the standard set forth in *Stolt-Nielsen* required individual arbitration, rather than collective action arbitration, in a matter in which plaintiffs originally brought an FLSA collective action); *Parvataneni v. E*Trade Fin. Corp.*, 967 F. Supp. 2d 1298, 1302 (N.D. Ca. 2013) (granting Defendant's motion to compel arbitration on an individual, rather than collective, basis on the grounds that, under *Stolt-Nielsen*, it was unfair to "coerce [defendant] to participate in proceedings that fundamentally change the

6

nature of the arbitration" absent evidence that Defendant had agreed to do so); *Garden Fresh Rest. Corp. v. Superior Court*, 231 Cal. App. 4th 678, 688 (2014) ("For the same reasons that 'arbitration is poorly suited to the higher stakes of class litigation,' it is reasonable to conclude that arbitration is similarly ill-suited to the higher stakes of a collective or representative action."). Furthermore, as the Second Circuit has explained, "the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp. v. Remote Solution Co.* 398 F.3d 205, 208 (2d Cir. 2005); *see also Sanders v. Forex Capital Mkts., LLC*, No. 11-0864, 2011 U.S. Dist. LEXIS 137961, 9-10 (S.D.N.Y. Nov. 29, 2011) (holding it is "settled law that a court decides th[e arbitrability] issue unless there is unmistakable evidence that the parties intended for the arbitrator to resolve it.").

In this case, there is no "clear and unmistakable evidence" that the parties intended the arbitrator to determine this question. Demonstrating "clear and unmistakable evidence otherwise" is an "onerous" task and should not be inferred from the parties' choice of forum. Rather, clear and unmistakable evidence is to be found only where there is "express contractual language unambiguously delegating the question of arbitrability to the arbitrator." *Opalinski*, 761 F.3d at 335. The Respondents' Agreements lack any such language.[3]

---

[3] Furthermore, the "American Arbitration Association's Securities Arbitration Rules, effective May 1, 1993," referenced in the Agreements, do not provide that the arbitrator decides issues of arbitrability normally left to the Court. Turnbull Decl., Ex. G. Rather, they merely provide that "the authority and duties of the AAA are established in the *agreement of the parties* and in these rules, and may be carried out through such of the AAA's representatives as it may direct." *Id.* (emphasis added). Nowhere in the "agreement of the parties" is there clear and unmistakable evidence that the parties intended the arbitrator to decide this issue. *See Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013) (compelling individual arbitration where arbitration agreement required disputes to be "settled by arbitration [. . .] in accordance with the rules . . . of, the New York Stock Exchange, Inc. ("NYSE") or if the matter is not arbitrable before the NYSE, the National Association of Securities Dealers ("NASD"). If both the NYSE and the NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("AAA") in accordance with the commercial arbitration rules of the AAA."). The facts here are therefore dissimilar to the facts of cases holding that the parties had delegated questions of arbitrability to the arbitrator, such as *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013). There, the parties "clearly and unmistakably delegated questions of arbitrability to the arbitrator" where the arbitration clause specified that the "rules of JAMS [would] apply." The rules of JAMS specifically said, "arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the (Footnote continued)

**B.      Respondents Must Arbitrate Their Individual Claims Against Wells Fargo On An Individual Basis Because Their Arbitration Agreements Do Not Authorize Class Or Collective Arbitration**

To determine whether the Respondents may arbitrate their claims against Wells Fargo on a class or collective action basis, the Court need look no further than the Respondents' arbitration agreements themselves.  Arbitration is a matter of consent and in *Stolt-Nielsen,* the Supreme Court made clear that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  Although, in certain contexts, an arbitrator may presume that the parties to an arbitration agreement have implicitly agreed to certain arbitration procedures, class action arbitration is not one of them.  *Id.* at 685. Because class action arbitration changes the nature of arbitration so significantly, the Supreme Court has made clear that an implicit agreement to authorize class-action arbitration may not be inferred solely from the fact of the parties' agreement to arbitrate.  *Id.*

Unlike bilateral arbitration, "class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (2011).  Before an arbitrator resolves a class dispute on the merits, the arbitrator must "first decide, for example, whether the class itself may be certified, whether the named parties are sufficiently representative and typical, and how discovery for the class should be conducted." *Id.*  Such decisions are not commonly entrusted to arbitrators because "arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification."  *Id.* at 1750.

---

Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *Id*  There is no such language here.

Thus, "the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration." *Stolt-Nielsen*, 559 U.S. at 685-86.

In addition, the narrow scope of judicial review of arbitration awards makes arbitration "poorly suited to the higher stakes of class litigation." *Concepcion*, 131 S. Ct. at 1752.  While bilateral arbitration intentionally "forego[es] the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution," in class arbitration, the "absence of multilayered review makes it more likely that errors will go uncorrected" – and when potential damages owed to a class of plaintiffs "are aggregated and decided at once, the risk of an error will often become unacceptable." *Id*.  Thus, the Supreme Court in *Concepcion* found "it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended [under the FAA] to allow . . . courts to force such a decision." *Id*.   In short, the differences between bilateral and class and collective action arbitration are simply "too great for the [court] to presume that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Stolt-Nielsen*, 559 U.S. at 687.  Unless the court finds evidence in an arbitration agreement of the specific intent to arbitrate on a class or collective action basis, the court must assume that the parties have only authorized bilateral arbitration on an individual basis. *Id*.

The Agreements at issue here lack any provisions authorizing class or collective action arbitration.  They make no reference to class or collective action arbitration.  *Stolt-Nielsen*, 559 U.S. at 687 ("[T]he parties' mere silence on the issue of class-action arbitration" in an agreement cannot "constitute . . . consent to resolve their disputes in class proceedings.").  To the contrary,

they contain language confirming that the parties agreed to arbitration on an individual, bilateral basis only.  For example, they emphasize "[*y*]*ou* are agreeing to arbitrate any dispute, claim or controversy that may arise between *you* and *your firm* . . .," "[t]his means that *you* are giving up the right to sue in court . . .," "[n]othing in this Agreement prevents *you* from filing a charge . . . with. . .the EEOC," "*you* agree your claim will become subject to arbitration as noted," "*you* may not assign this Agreement," and "[t]his Agreement is binding on *you, your heirs, administrators and executors*. . ."    Exs. A – C at ¶ 14 (emphasis added).  Similarly, the Agreement states that it is intended to cover "any controversy or dispute . . . between *you* and Wells Fargo Advisors."  *Id.* This limiting language indicates that each Respondent's Agreement only applies to disputes between that individual and the company.  Thus, the Agreements confirm that the parties to this matter have chosen to "forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."  *Stolt-Nielsen,* 559 U.S. at 685 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)); *see also 14 Penn Plaza LLC v. Pyett,* 556 U.S. 247 (2009) ("Parties generally favor arbitration precisely because of the economics of dispute resolution").  That such benefits are "much less assured" with respect to class and collective action arbitration demonstrates that the parties did not mutually agree to that procedure.  *Reed Elsevier*, 734 F.3d at 598.

Reviewing similar agreements, the courts in this District have routinely and consistently found no contractual agreement to arbitrate on a class or collective action basis.  *See e.g.*, *Fensterstock v. Educ. Fin. Partners*, 611 F.3d 124, 141 (2d Cir. 2010) ("[E]xcising the Note's class action and class arbitration waiver clause leaves the Note silent as to the permissibility of class-based arbitration, and under *Stolt-Nielsen* we have no authority to order class-based

arbitration."); *Anwar*, 950 F. Supp. 2d 633 (granting motion to compel individual arbitration as "a party may not be compelled ... to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so") (citations omitted); *Chen-Oster*, 785 F. Supp. 2d at 403-05, *rev'd sub nom. on other grounds, Parisi*, 710 F.3d 483 (where "Employment Agreement [was] undisputedly silent with respect to the availability of class arbitration," court found that "under *Stolt–Nielsen* and New York contract law, the defendant cannot be compelled to submit to class arbitration."); *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 554 (S.D.N.Y. 2011), *rev'd and remanded on other grounds*, 726 F.3d 290 (2d Cir. 2013) ("In accordance with *Stolt–Nielsen*, class arbitration may not be imposed on parties whose arbitration agreements are silent on the permissibility of class proceedings.").

Courts in jurisdictions around the country have reached the same result.  *See Eshagh*, 588 Fed. App'x at 704 ("The Supreme Court has made it clear that 'class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.'") (quoting *Stolt-Nielsen*, 559 U.S. at 685); *Martinez v. Leslie's Poolmart, Inc.*, No. 14-01481, 2014 WL 5604974, at *3 (C.D. Cal. Nov. 3, 2014) (compelling arbitration on an individual basis where the "plain language of the agreement appears to contemplate bilateral arbitration" because it "refers to plaintiff exclusively in terms of 'I,' 'me,' and 'my'. . ." ); *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1129-31 (2012) (finding that an arbitration agreement did not permit class arbitrations because it only covered "claims, disputes, and controversies 'between myself and [defendant],'" and "[this] contractual language, by its ordinary meaning, unambiguously negate[d] any intention by [the defendant] to arbitrate claims or disputes" that involved anyone other than the plaintiff who had signed the agreement."); *Thomas v. Right*

11

*Choice Staffing Grp., LLC*, No. 15-10055, 2015 WL 4078173, at *7 (E.D. Mich. July 6, 2015) ("The arbitration clause in the Subcontractor Agreements does not mention classwide arbitration. As such, the Court makes the determination that Plaintiffs may not seek classwide relief with respect to their FLSA claims arising from work performed under the Subcontractor Agreement."); *Corrigan*, 2012 WL 2977262, at *4-5 (rejecting class arbitration where the arbitration clause was silent as to class arbitration); *Hickey v. Brinker Int'l Payroll Co. L.P.*, No. 13- 00951, 2014 WL 622883, at *4 (D. Col. Feb. 18, 2014) ("mere silence" on issue of class arbitration "cannot be read to require defendant to submit to arbitration of class or collective action claims"); *Goodale v. George S. May Int'l, Co.*, No. 10- 5733, 2011 WL 1337349, at *2 (ND. Ill. Apr. 5, 2011) ("The Plaintiffs insist that the agreement's silence mandates that the Court allow the arbitrator to determine the arbitrability of the class claims.  Supreme Court precedent, however, squarely forecloses the possibility that the class claims are arbitrable.").

The Respondents' Agreements do not include any evidence – let alone clear, specific, and unequivocal evidence – that the parties intended to authorize arbitration on a class or collective action basis.  To the contrary, the language of the Agreements repeatedly reflects the parties' intent to arbitrate *only* individual claims on a non-class and non-collective action basis.  Accordingly, Petitioner respectfully requests that this Court dismiss, or in the alternative stay, the pending arbitration at AAA and compel Respondents to arbitrate their individual claims on a non-class and non-collective action basis.

**C.     The Procedural "Fall Back" To AAA Is Not Implicit Consent To Arbitration On A Class or Collective Action Basis**

The Agreements require disputes to be submitted to arbitration before FINRA in the first instance.  Turnbull Decl., Exs. A – C.  If FINRA does not accept the controversy, then the dispute is to be submitted to individual arbitration before AAA.  *Id.*  One reason that FINRA

may decline to administer an arbitration is that the Statement of Claim contains class or collective action allegations. See FINRA Rules 13204 (a)(1) and (b)(1). Here, because Respondents' Statement of Claim contained class and collective action allegations, FINRA declined to administer the arbitration. Petition ¶ 13. Accordingly, pursuant to the Agreements, Respondents must arbitrate their claims individually at AAA. Turnbull Decl., Ex. A – C.

The clear, unambiguous intent of the parties to individually arbitrate disputes, as evidenced by the face of Agreements, cannot be changed by FINRA's procedural rule. Put more simply, the fact that a party can avoid arbitrating at FINRA by simply including the words "class action" or "collective action" in a statement of claim has no effect on the terms of the parties' otherwise enforceable agreement to arbitrate claims on an individual basis. As individual arbitration was the goal of the parties, they provided an alternate forum in the Agreements precisely to handle those disputes FINRA did not accept. *See Cohen v. UBS Fin. Servs., Inc.*, No. 14-781, 2015 WL 3953348 (2d Cir. June 30, 2015) (court compelled individual arbitration notwithstanding plaintiff's argument that the FINRA Rules precluded enforcement of his arbitration agreement because the Code expressly prohibits the arbitration of claims which could be brought collectively or by a class); *Parisi*, 710 F.3d 483 (where agreement was silent as to arbitration of class claims, designation of AAA as fall-back forum did not implicitly authorize class-wide arbitration).

If "[a]n implicit agreement to authorize class-action arbitration . . . is not a term" that may be "infer[ed] solely from the fact of the parties' agreement to arbitrate," then an implicit agreement to authorize class-action arbitration is not a term that can be inferred by Wells Fargo's inclusion of a particular forum for arbitration in the Agreements. *Stolt-Nielsen,* 130 S. Ct. 1758. The parties may choose to arbitrate claims in an alternative forum under the plain terms of

FINRA Rule 13204, and that is exactly what Wells Fargo did when it included the fall back forum in the Agreements.

Wells Fargo included an alternate forum in the Agreements as a "fall back" in the event employees sought to avoid arbitration all together by simply alleging class or collective action claims in their Statement of Claim with FINRA.  Had Wells Fargo not included AAA as an alternate forum, then employees seeking to avoid arbitration would simply have to use the magic words, "class" or "collective," in the Statement of Claim to evade arbitration and end up in Court.  The fact that the parties agreed to avoid this result by including the AAA as a backup forum in the Agreements further evidences the parties' intent to individually arbitrate disputes.

A written agreement to resolve a dispute through arbitration must be enforced by its terms. *AT&T Mobility*, 131 S. Ct. at 1745.  The parties agreement to submit disputes to FINRA was not an implicit agreement to arbitrate class claims where no such agreement otherwise appears in the Agreement.  As such, Respondents must arbitrate their individual claims on a non-class and non-collective action basis.

**D.    Even In The Absence Of The Agreements, This Court Must Dismiss Or Stay The Pending Arbitration Due To The Previously Filed Collective Action Pending In The Northern District of Illinois**

Even if Respondents had not agreed to individually arbitrate any employment claims, the arbitration filed at AAA would nonetheless have to be dismissed or stayed as the claims alleged by Respondents substantially overlap with the claims alleged in the earlier-filed *Williams* action, which has been pending in the Northern District of Illinois since March 2014.  Accordingly, as different plaintiffs have filed two or more overlapping lawsuits, the "well-settled legal doctrine" of the "first-filed" rule requires that "the first suit should have priority."  *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (quotation omitted),

*appeal dismissed*, 346 F. App'x 652 (2d Cir. 2009); *see also 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (when two proceedings involving substantially the same parties and issues are pending simultaneously in different federal courts, "the court which first has possession of the action decides it").   Therefore, dismissal or a stay of the arbitration under the first-filed rule is warranted because Respondents fall within the collective action definition in *Williams*, allege the same claims, and seek the same relief.   *See James v. AT&T Corp.*, 334 F. Supp. 2d 410, 412 (S.D.N.Y. 2004) (dismissing duplicative second-filed suit in which the claims, parties, and relief requested were virtually identical).

## CONCLUSION

By initiating arbitration, the Respondents concede that they entered into valid, binding, and enforceable arbitration agreements covering the claims they seek to assert against Wells Fargo.   Those arbitration agreements, however, do not contain any contractual agreement to arbitrate on a class or collective action basis.   Accordingly, Petitioner respectfully requests that the Court dismiss, or in the alternative stay, the pending arbitration at AAA and issue an order compelling each Respondent to arbitrate his or her individual claims on a non-class and non-collective action basis.   In the alternative, the arbitration must be dismissed or stayed under the first-filed rule.   Finally, Petitioner requests that the Court award Petitioner such other and further relief as the Court may deem just and proper.

Dated:  September 30, 2015                     Respectfully submitted,

                                              _____/s/ *Kenneth J. Turnbull*_____
                                              Kenneth J. Turnbull
                                              Ashley Hale
                                              Morgan, Lewis & Bockius LLP
                                              101 Park Avenue
                                              New York, NY  10178
                                              212.309.6000
                                              212.309.6001 (fax)
                                              kturnbull@morganlewis.com
                                              ahale@morganlewis.com

                                              *Attorneys for Defendant*
                                              *Wells Fargo Financial Advisors LLC*