# EXHIBIT D

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

## FINANCIAL INDUSTRY REGULATORY AUTHORITY

REAGAN TUCKER, BENJAMIN DOOLEY, and MARVIN GLASGOLD, individually and on behalf of all others similarly situated,

Claimants,

v.

WELLS FARGO ADVISORS LLC and WELLS FARGO & COMPANY,

Respondents.

**STATEMENT OF CLAIM**

**Case No.**

## <u>INTRODUCTION</u>

Claimants Reagan Tucker, Benjamin Dooley, and Marvin Glasgold ("Claimants") bring this action against Respondents Wells Fargo Advisors LLC and Wells Fargo & Company (collectively, "Wells Fargo" or "Respondents"). This action has been cross-filed with the American Arbitration Association ("AAA") to the extent that the Financial Industry Regulatory Authority ("FINRA") will not accept this action because it is a class action. Claimants, individually and on behalf of all others similarly situated, by their attorneys at Outten & Golden LLP and Shavitz Law Group, P.A., allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

1

## PRELIMINARY STATEMENT

1.      Claimants were employed by Respondents as "New Financial Advisors" in Wells Fargo's Financial Advisor Training Program.  Claimants were first employed as trainees in the basic training phase of the program and were classified as non-exempt from statutory overtime requirements ("Trainees").  Thereafter, Claimants Tucker and Dooley continued on into the "Apprentice Phase" of Wells Fargo's program where they were classified as exempt from statutory overtime requirements ("Apprentice Phase FAs").

2.      Claimants bring this action on behalf of themselves and other similarly situated current and former Trainees and Apprentices Phase FAs nationwide, and persons in similar positions regardless of their precise titles, to recover unpaid overtime wages.

3.      Respondents have unlawfully denied Trainees pay for overtime hours they worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and state wage and hour laws by implementing and enforcing a policy whereby Trainees are not permitted to record all of their hours worked, including overtime hours in excess of 40 in a workweek.

4.      Respondents have also unlawfully denied Apprentice Phase FAs pay for overtime hours they worked in violation of the FLSA and state wage and hour laws by misclassifying them as exempt employees, thereby failing to pay them for the overtime hours they worked in excess of 40 in a workweek.

5.      Respondent Wells Fargo & Company is a publicly-traded, global financial services firm and Fortune 500 corporation incorporated in Delaware, and headquartered in San Francisco, California.  According to its filings with the Securities and Exchange Commission, as of December 31, 2014, Wells Fargo & Company had assets of $1.5 trillion, making it the

2

fourth largest bank holding company in the United States. The company provides a wide range of financial products and services to its global and domestic clients, which include corporations, governments, financial institutions, and individuals.

6. As part of its brokerage, investment advisory, and financial and wealth planning services, Wells Fargo employs more than 264,900 employees, including Trainees and Apprentice Phase FAs in over 1,375 offices across the United States.

7. Respondent Wells Fargo Advisors, LLC is registered with the SEC as a broker-dealer and with Commodity Futures Trading Commission as a futures commission merchant.

8. On January 1, 2009, Wells Fargo & Company completed its merger with Wachovia Corporation, effective December 31, 2008, creating North America's most extensive distribution system for financial services.

9. Pursuant to corporate policies formulated in whole or in part at Respondents' headquarters in San Francisco, and applicable at Respondents' locations nationwide, Respondents created, implemented, and enforced a policy whereby they have prohibited Trainees from recording all of their hours worked, including the hours they worked over 40 in a workweek.

10. Pursuant to corporate policies formulated in whole or in part at Respondents' headquarters in San Francisco, and applicable at Respondents' locations nationwide, Respondents have misclassified Apprentice Phase FAs as exempt from federal overtime pay requirements.

11. Pursuant to corporate policies formulated in whole or in part at Respondents' headquarters in San Francisco, and applicable at Respondents' locations nationwide, Respondents have encouraged and required Trainees and Apprentice Phase FAs to work more

than 40 hours per workweek, but have not compensated them for all of their hours worked.

12.   By the conduct described in this Demand for Arbitration, Respondents have willfully violated the FLSA and state law by failing to pay their employees, including Claimants, proper wages as required by law.

13.   Claimants seek to recover unpaid wages that Respondents owe them and similarly situated current and former Trainees and Apprentice Phase FAs.  Claimants Tucker and Dooley bring this action under the FLSA, 29 U.S.C. §§ 201 *et seq.*, on behalf of themselves and all similarly situated current and former Trainees and Apprentice Phase FAs who worked for Respondents nationwide, as an opt-out class arbitration.

14.   Claimants Glasgold and  Dooley (the "New York Trainee Claimants") also bring this action on behalf of themselves and all similarly situated current and former employees of Respondents who worked as Trainees in New York to remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations (collectively, "NYLL"), as an opt-out class arbitration.

15.   Claimant Dooley (the "New York Apprentice Claimant") also brings this action on behalf of himself and all similarly situated current and former employees of Respondents who worked as Trainees in New York to remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations (collectively, "NYLL"), as an opt-out class arbitration.

16.   Claimants seek monetary damages and affirmative relief for Respondents' violations of the FLSA and the NYLL.

4

## THE PARTIES

### Claimants

#### *Claimant Reagan Tucker*

17.  Claimant Reagan Tucker ("Tucker") is a resident of Arlington, Texas.

18.  From approximately March 2013 to August 2013, Tucker was directly employed by Respondents at one of its locations in Fort Worth, Texas.  From approximately March 2013 to June 2013, he was employed by Respondents as a non-exempt, salaried Trainee.  In approximately June 2013, he became an Apprentice Phase FA and remained in that position until approximately August 2013.

#### *Tucker's Employment with Respondents as a Trainee*

19.  While he was employed as a Trainee, Tucker's principal work activities were to complete Wells Fargo's training curriculum and prepare for and pass certain licensing exams.

20.  Tucker and other Trainees worked to complete Wells Fargo's curriculum requirements and to prepare for the required licensing examinations in the ordinary course of business during their regular scheduled work hours.

21.  If Tucker and the other Trainees did not timely complete the requirements of the Training Program, or if they failed the licensing exams, they were subject to termination.

22.  In order to successfully complete the requirements of the Training Program and avoid termination, including preparing for and passing the licensing exams, Tucker and other Trainees were required to work a significant number of hours beyond their scheduled work hours, including more than 40 in a workweek.

23.   Pursuant to Respondents' policy, pattern, and/or practice, Tucker regularly worked more than 40 hours in a workweek but was not compensated for overtime hours worked.

24.   During almost every week that Tucker worked for Respondents as a Trainee, he worked in Respondents' offices from approximately 7:30 or 8:30 a.m. to approximately 5:30 p.m. or 6:00 p.m., Mondays through Fridays.  Approximately once a week he worked later – until approximately 7:30 p.m. – to attend networking events.

25.   In addition, to prepare for his Group 1 life and heath exam, for about two weeks, Tucker studied in the evenings for an additional two hours per weekday, and on the weekend prior to the exam, he studied for approximately eight hours.

26.   Throughout his employment with Respondents as a Trainee, Tucker regularly worked through his lunch breaks.  He was rarely, if ever, relieved of duty during his unpaid lunch period and routinely ate lunch at his desk while he worked.

27.   Tucker's supervisors were aware that he worked overtime hours and encouraged him to do so.

28.   However, pursuant to Respondents' centralized, company-wide policy, pattern, and/or practice set in whole or in part in Respondents' headquarters in San Francisco, Tucker was not permitted to record any hours that he worked over 40 in a workweek and consequently was not compensated for his overtime hours worked.

29.   Respondents failed to keep accurate records of the hours that Tucker worked as a Trainee.

30.   Tucker earned approximately $60,000.00 in salary per year as a Trainee.

***Tucker's Employment with Respondents as an Apprentice Phase FA***

6

31.    While he was employed by Respondents as an Apprentice Phase FA, Tucker's primary duties included inside sales and customer service.

32.    Tucker exercised little or no independent discretion and judgment in performing his primary duties.

33.    Pursuant to a centralized, company-wide policy, pattern, and/or practice set in whole or in part at Respondents' headquarters in San Francisco, Respondents misclassified Tucker as exempt from statutory overtime protections.

34.    Pursuant to Respondents' policy, pattern, and/or practice, Tucker regularly worked more than 40 hours in a workweek but was not compensated for overtime hours worked.

35.    Throughout his employment with Respondents, during almost every week that Tucker worked for Respondents as an Apprentice Phase FA, he worked in the office from approximately 8:00 a.m. or 9:00 a.m. to approximately 5:00 p.m. or 6:00 p.m., Mondays through Fridays.  Approximately once per week during the weekday, he worked later – until approximately 7:30 p.m. – to attend work-related networking events.      In addition, approximately every other Saturday, he worked in the office for three to four hours.

36.    Tucker also worked from home in the evening for approximately two hours each weekday, and for approximately four hours each day on Saturdays and Sundays.

37.    Throughout his employment with Respondents as an Apprentice Phase FA, Tucker worked through his lunch breaks approximately one or two days each week.

38.    Respondents failed to keep accurate records of the hours that Tucker worked while he was an Apprentice Phase FA.

39.    A written consent to join form for Tucker is attached hereto as **Exhibit A.**

***Claimant Benjamin Dooley***

40.    Claimant Benjamin Dooley ("Dooley") is a resident of Garfield, NJ.

41.    From approximately June 2012 to August 2012 and again from December 2012 to May 2013, Dooley was directly employed by Respondents at one of its locations in Syracuse, Texas.   From approximately June 2012 to August 2012 and again from December 2012 to January 2013, he was employed by Respondents as a non-exempt, salaried Trainee.   In approximately January 2013, he became an Apprentice Phase FA and remained in that position until approximately May 2013.

***Dooley's Employment with Respondents as a Trainee***

42.    While he was employed as a Trainee, Dooley's principal work activities were to complete Wells Fargo's training curriculum and prepare for and pass certain licensing exams.

43.    Dooley and other Trainees worked to complete Wells Fargo's curriculum requirements and to prepare for the required licensing examinations in the ordinary course of business during their regular scheduled work hours.

44.    If Dooley and the other Trainees did not timely complete the requirements of the Training Program, or if they failed the licensing exams, they were subject to termination.

45.    In order to successfully complete the requirements of the Training Program and avoid termination, including preparing for and passing the licensing exams, Dooley and other Trainees were required to work a significant number of hours beyond their scheduled work hours, including more than 40 in a workweek.

46.    Pursuant to Respondents' policy, pattern, and/or practice, Dooley regularly worked more than 40 hours in a workweek but was not compensated for overtime hours worked.

47.   During almost every week that Dooley worked for Respondents as a Trainee, he worked in Respondents' offices from approximately 8:00 a.m. to approximately 9:00 p.m., Mondays through Fridays.  Further, Dooley worked an additional approximately six hours on Saturday and again Sunday.

48.   Throughout his employment with Respondents as a Trainee, Dooley regularly worked through his lunch breaks.  He was rarely, if ever, relieved of duty during his unpaid lunch period and routinely ate lunch at his desk while he worked.

49.   Dooley's supervisors were aware that he worked overtime hours and encouraged him to do so.

50.   However, pursuant to Respondents' centralized, company-wide policy, pattern, and/or practice set in whole or in part in Respondents' headquarters in San Francisco, Dooley was not permitted to record any hours that he worked over 40 in a workweek and consequently was not compensated for his overtime hours worked.

51.   Respondents failed to keep accurate records of the hours that Dooley worked as a Trainee.

52.   Dooley earned approximately $45,000.00 in salary per year as a Trainee.

***Dooley's Employment with Respondents as an Apprentice Phase FA***

53.   While he was employed by Respondents as an Apprentice Phase FA, Dooley's primary duties included inside sales and customer service.

54.   Dooley exercised little or no independent discretion and judgment in performing his primary duties.

55.    Pursuant to a centralized, company-wide policy, pattern, and/or practice set in whole or in part at Respondents' headquarters in San Francisco, Respondents misclassified Dooley as exempt from statutory overtime protections.

56.    Pursuant to Respondents' policy, pattern, and/or practice, Dooley regularly worked more than 40 hours in a workweek but was not compensated for overtime hours worked.

57.    During almost every week that Dooley worked for Respondents as a Trainee, he worked in Respondents' offices from approximately 8:00 a.m. to approximately 9:00 p.m., Mondays through Fridays.  Further, Dooley worked an additional approximately six hours each day on Saturday and Sunday.

58.    Throughout his employment with Respondents as an Apprentice Phase FA, Dooley worked through his lunch breaks approximately three to five days each week.

59.    Respondents failed to keep accurate records of the hours that Dooley worked while he was an Apprentice Phase FA.

60.    A written consent to join form for Dooley is attached hereto as **Exhibit B.**

### *Claimant Marvin Glasgold*

61.    Claimant Marvin Glasgold ("Glasgold") is a resident of Lake Grove, New York.

62.    From approximately October 2011 to January 2012, Glasgold was directly employed by Respondents as a Trainee in one of Respondents' locations in Smithtown, New York.

63.    While he was employed as a Trainee, Glasgold's principal work activities were to complete Wells Fargo's training curriculum and prepare for and pass certain licensing exams.

64. Glasgold and other Trainees worked to complete Wells Fargo's curriculum requirements and to prepare for the required licensing examinations in the ordinary course of business during their regular scheduled work hours.

65. If Glasgold and the other Trainees did not timely complete the requirements of the Training Program, or if they failed the licensing exams, they were subject to termination.

66. In order to successfully complete the requirements of the Training Program and avoid termination, including preparing for and passing the licensing exams, Glasgold and other Trainees were required to work a significant number of hours beyond their scheduled work hours, including more than 40 in a workweek.

67. Pursuant to Respondents' policy, pattern, and/or practice, Glasgold regularly worked more than 40 hours in a workweek but was not compensated for overtime hours worked.

68. During almost every week that Glasgold worked for Respondents as a Trainee, he worked in Respondents' offices from approximately 8:30 a.m. to 9:00 p.m. or 9:30 p.m., Mondays through Fridays, and on Saturdays from approximately 9:00 a.m. until between 2:00 p.m. and 4:00 p.m. In addition, Glasgold worked from approximately 10:00 a.m. to 2:00 p.m. on about four to five Sundays during his tenure as a Trainee.

69. Throughout his employment with Respondents as a Trainee, Glasgold regularly worked through his lunch breaks. He was rarely, if ever, relieved of duty during his unpaid lunch period and routinely ate lunch at his desk while he worked.

70. Glasgold's supervisors were aware that he worked these overtime hours and encouraged him to do so.

71.   However, pursuant to Respondents' centralized, company-wide policy, pattern, and/or practice set in whole or in part in Respondents' headquarters in San Francisco, Glasgold was not permitted to record any hours that he worked over 40 in a work week and consequently was not compensated for his overtime hours worked.

72.   Respondents failed to keep accurate records of the hours that Glasgold worked when he was a Trainee.

73.   Glasgold earned approximately $60,000.00 in salary per year as a Trainee.

74.   A written consent to join form for Glasgold is attached hereto as **Exhibit C.**

## Respondents

### *Respondent Wells Fargo & Company*

75.   Upon information and belief, Respondent Wells Fargo & Company is a Delaware corporation doing business within Suffolk County in the State of New York.   Respondent Wells Fargo & Company is the parent corporation of Wachovia Securities Financial Holdings, LLC.

### *Respondent Wells Fargo Advisors LLC*

76.   Upon information and belief, Respondent Wells Fargo Advisors LLC is a Delaware corporation doing business within Suffolk County in the State of New York. Wells Fargo Advisors, LLC, and its subsidiaries, are directly and indirectly owned by Wachovia Securities Financial Holdings, LLC, which is a wholly owned subsidiary of Wells Fargo & Company, LLC.

77.   During all relevant times, each Respondent employed or acted in the interest of an employer towards Claimants and other similarly situated current and former Trainees and Apprentice Phase FAs, and directly or indirectly, jointly or severally, including without

limitation, directly or indirectly controlled and directed the terms of employment and compensation of Claimants and other similarly situated current and former Trainees and Apprentice Phase FAs.  Upon information and belief, Respondents operate in concert and together in a common enterprise and through related activities, as here relevant, so that the actions of one may be imputed to the other and/or so that they operate as joint employees within the meaning of the FLSA and New York law.

78.   Each Respondent had the power to control the terms and conditions of employment of Claimants and other similarly situated current and former Trainees and Apprentice Phase FAs, including without limitation, those terms and conditions relating to the claims alleged herein.

79.   During all relevant times, Respondents were Claimants' employer or joint employer within the meaning of all applicable statutes.

80.   Upon information and belief, at all times pertinent hereto, each Respondent has employed more than five hundred people.

## FLSA CLASS ARBITRATION ALLEGATIONS

81.   Claimants Tucker and Dooley bring this arbitration on behalf of themselves and other Trainees and Apprentice Phase FAs as an opt-out class arbitration.

82.   Claimants Tucker and Dooley bring the First Cause of Action for violations of the FLSA on behalf of themselves and all similarly situated persons who work or have worked for Respondents as Trainees at Respondents' banking centers and wealth management locations nationwide on or after July 23, 2012 (the "Trainee Class").

83.   Claimants Tucker and Dooley bring the Second Cause of Action for violations the FLSA on behalf of themselves and all similarly situated persons who work or have worked for

13

Respondents as Apprentice Phase FAs at Respondents' banking centers and wealth management locations nationwide on or after July 23, 2012 (the "Apprentice Phase FA Class").

84.    The Apprentice Phase FA Class and the Trainee Class are collectively referred to as the "FLSA Classes."

85.    Excluded from the FLSA Classes are Respondents, Respondents' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Respondents; the arbitrator(s) to whom this case is assigned and any member of the arbitrator's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the FLSA Classes.

86.    The members of the FLSA Classes are so numerous that joinder of all members is impracticable.

87.    Upon information and belief, the FLSA Classes consist of more than 100 members.

88.    Claimants Tucker and Dooley will fairly and adequately protect the interests of the FLSA Classes.

89.    Claimants Tucker and Dooley are similarly situated to other Trainees and Apprentice Stage FAs.

90.    Claimants Tucker and Dooley and other Trainees are similarly situated in that they are subject to Respondents' common compensation policies, patterns, and/or practices, including without limitation, Respondents' policy, pattern, and/or practice of suffering, permitting, and/or encouraging Trainees to work more than their scheduled hours per week, including overtime hours, without ensuring that all of their work hours were properly recorded and compensated.

14

91.   Claimants Tucker and Dooley and other Apprentice Phase FAs had the same or similar primary job duties – namely, inside sales and customer service.

92.   Respondents subjected Claimants Tucker and Dooley and other Apprentice Phase FAs to the same unlawful compensation policies, including but not limited to, classifying them as exempt from the protections of the FLSA, encouraging them to work overtime hours without compensation, and failing to compensate them for overtime hours they worked.

93.   Respondents acted or refused to act on grounds generally applicable to the FLSA Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.

94.   Common questions of law and fact exist as to the FLSA Classes and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

     a.   Whether Respondents failed to pay Claimants Tucker and Dooley and the FLSA Classes overtime for all hours worked over 40 in a workweek;

     b.   What proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

     c.   Whether Respondents failed to compensate Claimants Tucker and Dooley and the FLSA Classes for all of the hours they worked; and

     d.   The nature and extent of class-wide injury and the appropriate measure of damages for the class.

95.   Claimants Tucker and Dooley and the FLSA Classes have all sustained similar types of damages as a result of Respondents' failure to comply with the FLSA.

96.   Claimants Tucker and Dooley have retained counsel competent and experienced in complex class actions and wage and hour litigation.

97.   A class action is superior to other available methods for the fair and efficient

adjudication of the claims of the FLSA Classes – particularly in the context of wage and hour litigation like the present action, where individual Claimants may lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.  The members of the FLSA Classes have been damaged and are entitled to recovery as a result of Respondents' common and uniform policies and procedures.  Although the relative damages suffered by individual FLSA Class Members are not *de minimis*, such damages are small as compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments against Respondents' practices.

98.   This action is properly maintainable as a class action.

99.   Respondents are liable under the FLSA for, *inter alia*, failing to properly compensate Claimants Tucker and Dooley and other Trainees and Apprentice Phase FAs. There are many similarly situated current and former Trainees and Apprentice Phase FAs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice regarding the present arbitration.  Those similarly situated employees are known to Respondents, are readily identifiable, and can be located through Respondents' records, such that notice should be sent to them pursuant to 29 U.S.C. § 216(b).

## NYLL CLASS ARBITRATION ALLEGATIONS

100.  The New York Trainee Claimants bring the Third Cause of Action, on behalf of themselves and all persons who have worked for Respondents as Trainees at Respondents' banking centers and wealth management locations in the State of New York between July 23, 2009 and the date of final judgment in this matter (the "New York Trainee Class").

101. The New York Apprentice Claimant brings the Fourth Cause of Action, on behalf of himself and all persons who have worked for Respondents as Apprentice Phase FAs at Respondents' banking centers and wealth management locations in the State of New York between July 23, 2009 and the date of final judgment in this matter (the "New York Apprentice Class") (the New York Trainee Class and the New York Apprentice Class collectively are referred to as the "New York Classes").

102. The New York Trainee Claimants and the New York Apprentice Claimant (collective referred to as the "New York Claimants") bring the Fifth Cause of Action, on behalf of themselves and the New York Classes.

103. Excluded from the New York Classes are Respondents, Respondents' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Respondents; the arbitrator(s) to whom this case is assigned and any member of the arbitrator's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Classes.

104. The members of the New York Classes are so numerous that joinder of all members is impracticable.

105. Upon information and belief, the New York Classes each consist of more than 100 members.

106. The New York Claimants will fairly and adequately protect the interests of the New York Classes.

107. Respondents acted or refused to act on grounds generally applicable to the New York Classes, thereby making appropriate final injunctive relief or corresponding declaratory

17

relief with respect to the New York Classes as a whole.

108. Common questions of law and fact exist as to the New York Classes and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

    a. Whether Respondents failed to pay the New York Claimants, and the New York Classes overtime for all hours worked over 40 in a workweek;

    b. Whether Respondents failed to keep true and accurate time records for all hours worked by the New York Claimants and the New York Classes;

    c. What proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

    d. Whether Respondents failed to compensate the New York Claimants and the New York Classes for all of the hours they worked; and

    e. The nature and extent of class-wide injury and the appropriate measure of damages for the New York Classes.

109. The New York Claimants' claims are typical of the claims of the New York Classes they seek to represent. The New York Claimants and the members of the New York Classes work or have worked for Respondents as Trainees and/or Apprentice Phase FAs in New York and have not been compensated for all of the hours they worked, including for hours worked over 40 in a workweek. The New York Claimants and the New York Classes have all sustained similar types of damages as a result of Respondents' failure to comply with the NYLL.

110. The New York Claimants have retained counsel competent and experienced in complex class actions and wage and hour litigation.

111. A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage and hour litigation like the present action, where individual Claimants may lack the financial resources to vigorously

prosecute a lawsuit against a corporate defendant.  The members of the New York Classes have been damaged and are entitled to recovery as a result of Respondents' common and uniform policies and procedures.  Although the relative damages suffered by individual members of the New York Classes are not *de minimis*, such damages are small as compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments against Respondents' practices.

112. This action is properly maintainable as a class action under the AAA's Supplementary Rules for Class Arbitrations.

## COMMON FACTUAL ALLEGATIONS

### *Trainees*

113. Pursuant to a centralized, company-wide policy, pattern, and/or practice set in whole or in part at Respondents' headquarters in San Francisco, Respondents classified all of their Trainees as non-exempt from federal overtime protections regardless of where they worked and suffered, permitted, and/or encouraged them to work in excess of their scheduled hours without ensuring that these hours were properly recorded or compensated.

114. As a result, Respondents failed to pay Claimants Tucker, Glasgold and Dooley and other Trainees for all of their hours worked, including for any of the overtime hours they worked over 40 in a workweek.

115. Respondents failed to keep accurate records of the hours that Claimants Tucker, Glasgold and Dooley and other Trainees worked.

116. Throughout the relevant period, it has been Respondents' policy, pattern, and/or practice to suffer, permit, and/or encourage Claimants Tucker, Glasgold and Dooley and other

19

Trainees to work in excess of their scheduled hours per week without paying them for all hours worked, including overtime hours.

117.  All of the work that Claimants Tucker, Glasgold and Dooley and other Trainees have performed has been assigned by Respondents, and/or Respondents have been aware or should have been aware of all of the work that Claimants Tucker, Glasgold and Dooley and other Trainees have performed.

118.  As part of their regular business practice, Respondents have intentionally, willfully, and repeatedly engaged in a policy, pattern, and/or practice of violating the FLSA. This policy, pattern, and/or practice includes but is not limited to:

   a.  willfully failing to pay Claimants Tucker, Glasgold and Dooley and other Trainees proper overtime wages for hours that they worked in excess of 40 hours in a workweek; and

   b.  willfully failing to record and properly compensate for all of the time that Claimants Tucker, Glasgold and Dooley and other Trainees have worked for the benefit of Respondents.

119.  Respondents are aware or should have been aware that the FLSA requires them to pay Claimants Tucker and Dooley and other Trainees for all hours worked, and to pay them an overtime premium for hours worked in excess of 40 hours per workweek.

120.  Respondents' conduct alleged herein has been widespread, repeated, and consistent, and it is contrary to the FLSA.

*Apprentice Phase FAs*

121.  The primary duties of all Apprentice Phase FAs include inside sales of financial products and customer service.

122.  Apprentice Phase FAs are expected to engage primarily in lead generation activities:  identifying potential clients, qualifying potential clients, calling potential clients,

and conducting appointments with potential clients to encourage them to do business with Respondents.

123.  Apprentice Phase FAs perform the vast majority of their work at Respondents' offices.

124.  Apprentice Phase FAs are not customarily and regularly engaged at Respondents' customers' homes or places of business.

125.  Apprentice Phase FAs exercise little or no independent discretion and judgment in performing their primary duties.  They do not collect and analyze customers' financial information to determine which financial products best suit customers' needs, or provide advice regarding the advantages and disadvantages of different financial products.  Nor do Apprentice Phase FAs compare and evaluate different courses of conduct, or make decisions after considering various possibilities.

126. Pursuant to a centralized, company-wide policy, pattern, and/or practice set in whole or in part at Respondents' headquarters in San Francisco, Respondents classified all of their Apprentice Phase FAs as exempt from federal overtime protections regardless of where they worked.

127.  Respondents did not perform a person-by-person analysis of each Apprentice Phase FAs' job duties in making their decision to classify all of their Apprentice Phase FAs as exempt from federal overtime protections.

128.  As a result of their decision to classify Apprentice Phase FAs as exempt from federal overtime protections, Respondents failed to pay Claimants Tucker and Dooley  and other Apprentice Phase FAs for any of the hours they worked over 40 in a workweek.

129. Respondents failed to keep accurate records of the hours that Claimants Tucker and Dooley and other Apprentice Phase FAs worked.

130. Throughout the relevant period, it has been Respondents' policy, pattern, and/or practice to require, suffer, or permit Claimants Tucker and Dooley and other Apprentice Phase FAs to work in excess of their scheduled hours without paying them for all hours worked, including overtime hours worked.

131. Apprentice Phase FAs regularly worked through their lunch breaks.

132. Respondents also regularly required Apprentice Phase FAs to work on Saturdays.

133. All of the work that Claimants Tucker and Dooley and other Apprentice Phase FAs have performed has been assigned by Respondents, and/or Respondents have been aware or should have been aware of all of the work that Claimants Tucker and Dooley and other Apprentice Phase FAs have performed.

134. As part of their regular business practice, Respondents have intentionally, willfully, and repeatedly engaged in a policy, pattern, and/or practice of violating the FLSA. This policy, pattern, and/or practice includes but is not limited to:

    a.    willfully misclassifying Claimants Tucker and Dooley and other Apprentice Phase FAs as exempt;

    b.    willfully failing to pay Claimants Tucker and Dooley and other Apprentice Phase FAs proper overtime wages for hours that they worked in excess of 40 hours in a workweek; and

    c.    willfully failing to record and properly compensate Claimants Tucker and Dooley and other Apprentice Phase FAs for all of the time that they have worked for the benefit of Respondents.

135. Respondents are aware or should have been aware that the FLSA requires them to pay Claimants Tucker and Dooley and other Apprentice Phase FAs for all hours worked, and to pay them an overtime premium for hours worked in excess of 40 hours per workweek.

136. Respondents' conduct alleged herein has been widespread, repeated, and consistent, and it is contrary to the FLSA.

137. Respondents required Apprentice Phase FAs to work the same business hours kept by the bank branch to which each Apprentice Phase FAs was assigned, which hours were 40 per week at minimum.

138. Apprentice Phase FAs were classified as exempt from statutory overtime requirements and paid on a purported salary basis and, therefore, were not paid an overtime premium for any hours worked over 40 per workweek.

### FIRST CAUSE OF ACTION
### FLSA: Unpaid Overtime Wages
**Brought by Claimants Tucker and Dooley Individually and on Behalf of the Trainee Class**

139. Claimants Tucker and Dooley reallege and incorporate by reference all allegations in paragraphs 1-138 above.

140. At all relevant times, Claimants Tucker and Dooley and other similarly situated current and former Trainees were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

141. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Respondents.

142. Respondents were and are employers of Claimants Tucker and Dooley and other similarly situated current and former Trainees and are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

143. At all relevant times, Claimants Tucker and Dooley and other similarly situated current and former Trainees were and are employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

23

144. Respondents have failed to pay Claimants Tucker and Dooley and other similarly situated current and former Trainees the wages to which they were entitled under the FLSA.

145. Respondents' violations of the FLSA, as described in this Demand for Arbitration, have been willful and intentional.

146. Because Respondents' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be tolled or extended by agreement, equity or operation of law.

147. As a result of Respondents' willful violations of the FLSA, Claimants Tucker and Dooley and other similarly situated current and former Trainees have suffered damages by being denied wages in accordance with 29 U.S.C. §§ 201 *et seq.*, in amounts to be determined at trial or through undisputed record evidence, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FLSA:  Unpaid Overtime Wages**
**Brought by Claimants Tucker and Dooley Individually**
**and on Behalf of the Apprentice Phase FA Class**

148. Claimants Tucker and Dooley reallege and incorporate by reference all allegations in paragraphs 1-147 above.

149. At all relevant times, Claimants Tucker and Dooley  and other similarly situated current and former Apprentice Phase FAs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

150. The overtime wage provisions set forth in §§ 201 *et seq.* of the FLSA apply to Respondents.

151. Respondents were and are employers of Claimants Tucker and Dooley and other

similarly situated current and former Apprentice Phase FAs and are engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

152. At all relevant times, Claimants Tucker and Dooley and other similarly situated current and former Apprentice Phase FAs were and are employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

153. Respondents have failed to pay Claimants Tucker and Dooley and other similarly situated current and former Apprentice Phase FAs the wages to which they were entitled under the FLSA. Respondents have also failed to properly calculate Claimants Tucker and Dooley's and other similarly situated current and formed Apprentice Phase FAs' regular rate by failing to include bonuses and/or other incentive pay in their regular and overtime rates of pay in violation of the FLSA.

154. Respondents' violations of the FLSA, as described in this Demand for Arbitration, have been willful and intentional.

155. Because Respondents' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be tolled or extended by agreement, equity or operation of law.

156. As a result of Respondents' willful violations of the FLSA, Claimants Tucker and Dooley and other similarly situated current and former Apprentice Phase FAs have suffered damages by being denied wages in accordance with 29 U.S.C. §§ 201 *et seq.*, in amounts to be determined at trial or through undisputed record evidence, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**New York Labor Law:  Unpaid Overtime**
**Brought by the New York Trainee Claimants Individually**
**and on Behalf of the New York Trainee Class**

157. The New York Trainee Claimants reallege and incorporate by reference all allegations in paragraphs 1-156 above.

158. Respondents have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Demand for Arbitration.

159. At all times relevant, each Respondent was an "employer" of the New York Trainee Claimants and the New York Trainee Class members within the meaning of the NYLL.

160. At all times relevant, the New York Trainee Claimants and the New York Class were "employees" of each Respondent within the meaning of NYLL.

161. At all times relevant, each Respondent employed the New York Trainee Claimants and the New York Class members, suffering or permitting them to work.

162. Respondents failed to pay overtime for all hours worked over 40 in a workweek to the New York Trainee Claimants and the New York Class members, in violation of the NYLL.

163. By Respondents' failure to pay the New York Trainee Claimants and the New York Trainee Class members overtime for all hours worked in excess of 40 hours per workweek, they have knowingly and willfully violated Article 19, §§ 650 *et seq*. and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

164. Respondents failed to keep, make, preserve, maintain, and furnish accurate records of hours worked by the New York Trainee Claimants and members of the New York Trainee Class.

165. Respondents' violations of the NYLL, as described in this Demand for Arbitration, have been willful and intentional.

166. Due to Respondents' violations of the NYLL, the New York Trainee Claimants and the members of the New York Trainee Class have incurred harm and loss and are entitled to recover from Respondents their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION
**New York Labor Law:  Unpaid Overtime**
**Brought by the New York Apprentice Claimant Individually**
**and on Behalf of the New York Apprentice Class**

167. The New York Apprentice Claimant realleges and incorporates by reference all allegations in paragraphs 1-166 above.

168. Respondents have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Demand for Arbitration.

169. At all times relevant, each Respondent was an "employer" of the New York Apprentice Claimant and the New York Apprentice Class members within the meaning of the NYLL.

170. At all times relevant, the New York Apprentice Claimant and the New York Apprentice Class were "employees" of each Respondent within the meaning of NYLL.

171. At all times relevant, each Respondent employed the New York Apprentice Claimant and the New York Apprentice Class Members, suffering or permitting them to work.

172. Respondents failed to pay overtime for all hours worked over 40 in a workweek to the New York Apprentice Claimant and the New York Apprentice Class members, in violation of the NYLL.

173. By Respondents' failure to pay the New York Apprentice Claimant and the New York Apprentice Class members overtime for all hours worked in excess of 40 hours per workweek, they have knowingly and willfully violated Article 19, §§ 650 et seq. and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

174. Respondents failed to keep, make, preserve, maintain, and furnish accurate records of hours worked by the New York Apprentice Claimant and members of the New York Apprentice Class.

175. Respondents' violations of the NYLL, as described in this Demand for Arbitration, have been willful and intentional.

176. Due to Respondents' violations of the NYLL, the New York Apprentice Claimant and the members of the New York Apprentice Class have incurred harm and loss and are entitled to recover from Respondents their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law: Wage Statements**
**Brought by the New York Claimants Individually and on Behalf of the New York Classes**

177. The New York Claimants reallege and incorporate by reference all allegations in paragraphs 1-176 above.

178. Respondents have willfully failed to supply the New York Claimants and the New York Classes with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the regular rate or rates of pay and the basis thereof, overtime rate or rates of pay, and the total number of hours worked, including overtime hours.

179. Respondents' unlawful conduct, as described in this Demand for Arbitration, has been willful. Respondents were aware or should have been aware that the practices described in this Demand for Arbitration were unlawful.

180. Due to Respondents' willful violations of NYLL, Article 6, § 195(3), the New York Claimants and the New York Classes are entitled to statutory penalties of one hundred dollars for each workweek that Respondents failed to provide each of them with accurate wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Claimants, individually and on behalf of all other similarly situated persons, pray for the following relief:

A. An Award certifying an opt-out class action with respect to the each Cause of Action alleged in this Statement of Claim;

B. Designation of Claimants Glasgold and Dooley as the New York Trainee Class Representative;

C. Designation of Claimant Dooley as the New York Apprentice Class Representative;

D. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

E. An award of damages, according to proof, including liquidated damages, to be paid by Respondents;

F. Pre-judgment and post-judgment interest, as provided by law;

G. A reasonable incentive award for Claimants to compensate them for the time they spend attempting to recover wages for Class Members and for the risks they face in doing so;

H. Attorneys' fees and costs of action incurred herein, including expert fees; and

I. Such other relief as the Arbitrator deems just and proper.

Dated: July 23, 2015
       New York, New York

                           Respectfully submitted,

By:_____
     Gregg I. Shavitz

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz
1515 South Federal Highway, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Attorneys for Claimants and the Putative Classes*

# EXHIBIT A

## CONSENT TO JOIN FORM

1.      I consent to be a party plaintiff in a lawsuit against Defendant(s),   Wells Fargo   , and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      I hereby designate the Shavitz Law Group, P.A. to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement.  I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

3.      I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

_____
Signature

_____
Print Name

# EXHIBIT B

DocuSign Envelope ID: 3E2D0CC6-CBF2-47C1-8C39-78E4A8BD8AEE

## CONSENT TO JOIN FORM

1.      I consent to opt-in to be a party plaintiff in a lawsuit against Defendant(s), Wells Fargo, and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      I hereby designate the Shavitz Law Group, P.A. and Outten & Golden LLP to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement.  I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

3.      I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

*Benjamin Dooley*
41E88D015C99410...
Signature

Benjamin Dooley
Print Name

# EXHIBIT C

## CONSENT TO JOIN FORM

1.      I consent to opt-in to be a party plaintiff in a lawsuit against Defendant(s), Wells Fargo, and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      I hereby designate the Shavitz Law Group, P.A. and Outten & Golden LLP to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement.  I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

3.      I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

_____
Signature

_____
Print Name