**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WELLS FARGO ADVISORS LLC,

Petitioner,

v.

REAGAN TUCKER, BENJAMIN DOOLEY, and MARVIN GLASGOLD,

Respondents.

Civil Action No. 15-cv-07722

**ORAL ARGUMENT REQUESTED**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITION TO DISMISS OR IN THE ALTERNATIVE STAY THE PENDING ARBITRATION AND COMPEL INDIVIDUAL ARBITRATION IN ACCORDANCE WITH THE BINDING ARBITRATION AGREEMENTS

MORGAN, LEWIS & BOCKIUS LLP
Kenneth J. Turnbull
Ashley Hale
101 Park Avenue
New York, NY 10178
212.309.6000
212.309.6001 (fax)
kturnbull@morganlewis.com
ahale@morganlewis.com

*Attorneys for Petitioner*
*Wells Fargo Advisors LLC*

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ........................................................................................................ 2

A. The Availability Of Class Proceedings In Arbitration Is A Question For The Court. ........................................................................................ 2

B. Respondents' Arbitration Agreements Do Not Authorize Class Arbitration. ........................................................................................ 6

C. The Williams Action Is a Duplicative, First-Filed Action. .................................. 10

III. CONCLUSION ........................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
950 F. Supp. 2d 633 (S.D.N.Y. 2013)....................4, 5, 6, 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................1, 2

*BG Grp., PLC v. Republic of Arg.*,
134 S.Ct. 1198 (2014)....................2

*Chassen v. Fid. Nat'l Fin., Inc.*,
No. 09-291, 2014 WL 202763 (D.N.J. Jan. 7, 2014)....................4

*Chen-Oster v. Goldman, Sachs & Co.*,
785 F. Supp. 2d 394 (S.D.N.Y. 2011) *rev'd sub nom. on other grounds, Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013)....................4, 5, 6, 8

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
No. 14-0620, 2014 WL 7335045 (M.D. Pa. Dec. 19, 2014)....................4

*Chesapeake Appalachia, LLC v. Suppa*,
No. 14-159, 2015 WL 966326 (N.D.W.Va. Mar. 4, 2015)....................4

*Chico v. Hilton Worldwide, Inc.*,
No. 14-5750, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014)....................4

*Cobarruviaz v. Maplebear, Inc.*,
No. 15-697, 2015 WL 6694112 (N.D. Cal. Nov. 3, 2015)....................4, 9

*Cohen v. UBS Fin. Servs., Inc.*,
No. 14-781, 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) *aff'd*, 799 F.3d 174 (2d Cir. 2015)....................5

*Corrigan v. Domestic Linen Supply Co.*,
No. 12-0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012)....................4, 6

*DIRECTV, LLC v. Arndt*,
546 F. App'x 836 (11th Cir. 2013)....................7

*Edwards v. Macy's Inc.*,
No. 14-8616, 2015 WL 4104718 (S.D.N.Y. June 30, 2015)....................6

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)....................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Eshagh v. Terminix Int'l Co,. L.P.*,
588 F. App'x 703 (9th Cir 2014) ....................2, 4

*Fensterstock v. Educ. Fin. Partners*,
611 F.3d 124 (2d Cir. 2010)....................8

*First City Nat'l Bank & Trust Co. v. Simmons*,
878 F.2d 76 (2d Cir.1989)....................10

*Goodale v. George S. May Int'l, Co.*,
No. 10-5733, 2011 WL 1337349 (ND. Ill. Apr. 5, 2011)....................4, 7

*Green Tree Fin. Corp. v. Bazzle*,
539 U.S. 444 (2003)....................1, 3, 5

*Hickey v. Brinker Int'l Payroll Co.*,
No. 13-0951, 2014 WL 622883 (D. Col. Feb. 18, 2014)....................4, 6

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)....................2

*Huffman v. Hilltop Cos., LLC*,
747 F.3d 391 (6th Cir. 2014) ....................2, 4, 8

*In re A2P SMS Antitrust Litig.*,
No. 12-2656, 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015)....................5, 6

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011)....................7

*Long John Silver's Rests., Inc. v. Cole*,
514 F. 3d 345 (4th Cir. 2008) ....................7

*Lopez v. Ace Cash Express, Inc.*,
No. 11-4611, 2012 WL 1655720 (C.D. Cal. May 4, 2012)....................9

*Martinez v. Leslie's Poolmart, Inc.*,
No. 14-1481, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014) ....................4

*Opalinski v. Robert Half Int'l Inc.*,
761 F.3d 326 (3d Cir. 2014)....................2, 3, 4, 6

*Oxford Health Plans, LLC v. Sutter*,
133 S. Ct. 2064 (2013)....................3, 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Rame, LLC v. Popovich*,
878 F. Supp. 2d 439 (S.D.N.Y 2012)....7

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
734 F.3d 594 (6th Cir. 2013) *cert. denied sub nom. Crockett v. Reed Elsevier, Inc.*, 134 S. Ct. 2291 (2014)....2, 3, 4, 9

*Sanders v. Forex Capital Mkts., LLC*,
No. 11-0864, 2011 U.S. Dist. LEXIS 137961 (S.D.N.Y. Nov. 29, 2011)....6

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010).... passim

*Sutherland v. Ernst & Young LLP*,
768 F. Supp. 2d 547 (S.D.N.Y. 2011), *rev'd and remanded on other grounds*, 726 F.3d 290 (2d Cir. 2013)....6, 8

*Thomas v. Right Choice Staffing Grp., LLC*,
No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015)....4

*Torres v. CleanNet U.S.A., Inc.*,
No. 14-2818, 2015 WL 500163 (E.D. Pa. Feb. 5, 2015)....4

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
899 F. Supp. 2d 235 (E.D.N.Y. 2012)....10

**OTHER AUTHORITIES**

FINRA Rule 13204 (a)....9

## I. PRELIMINARY STATEMENT

In its opening Memorandum, Wells Fargo demonstrated that the question of whether the Agreements require each Respondent to arbitrate his claims on an individual, non-class basis is a gateway issue for this Court to decide. Wells Fargo further demonstrated that those Agreements require individual, non-class arbitration.

In their opposition, Respondents rely heavily on the plurality opinion in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), to support their claim that class arbitration is a mere procedural issue for arbitrators to decide. The Supreme Court, however, has diminished the plurality in *Bazzle* and made clear that "*Bazzle* did not establish the rule to be applied in deciding whether class arbitration is permitted." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010). Indeed, subsequent Supreme Court decisions make clear that because "changes brought about by the shift from bilateral arbitration to class action arbitration are fundamental," the issue of whether class arbitration is permitted under the agreement presents a gateway issue to be decided by courts. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011). In accordance with these Supreme Court decisions, every Circuit Court of Appeals to confront this issue (along with district courts from around the country) has held that the gateway issue of whether an agreement permits class arbitration is for a court, not an arbitrator, to decide.

Further, Respondents wrongly assert that by designating the AAA as a forum, the parties "clearly and unmistakably" conferred authority to resolve this gateway issue on the arbitrators. The Agreements make no mention of class actions, and the parties' designation of the AAA as their chosen forum does not confer upon arbitrators the authority to resolve the class arbitrability issue. Indeed, the AAA Supplementary Rules for Class Arbitrations upon which Respondents rely to support their arguments are not part of the Agreements. The Agreements do not even suggest, let alone reflect a "clear and unmistakable" intent, that the class arbitration issue is for the arbitrator to decide.

## II. ARGUMENT

### A. The Availability Of Class Proceedings In Arbitration Is A Question For The Court.

The Supreme Court has "given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013) *cert. denied sub nom. Crockett v. Reed Elsevier, Inc.*, 134 S. Ct. 2291 (2014). Every Court of Appeals that has ruled on this issue has decided that classwide arbitrability is a gateway question for the court, rather than the arbitrator. *See Reed Elsevier*, 734 F.3d at 598; *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391 (6th Cir. 2014); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326 (3d Cir. 2014); *Eshagh v. Terminix Int'l Co,. L.P.*, 588 F. App'x 703 (9th Cir 2014).

Respondents' characterization of class arbitrability as merely a "procedural issue" for the arbitrator to deal with is erroneous. Procedural matters include "claims of 'waiver, delay or a like defense to arbitrability' . . . [and] include the satisfaction of 'prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate.'" *BG Grp., PLC v. Republic of Arg.*, 134 S.Ct. 1198, 1207 (2014), *quoting Moses C. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 (1983) and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002). Whether the parties' arbitration agreements permit class arbitration is vastly more consequential than the "procedural matters" that are to be decided by arbitrators. *BG Grp. PLC,*, 134 S.Ct. at 1207. In *Stolt–Nielsen*, "the Supreme Court expressly disclaimed classwide arbitration as simply procedural," observing that "the differences between class and individual arbitration cannot be characterized as a question of 'merely what 'procedural mode' [i]s available to present [a party's] claims.'" *Opalinski*, 761 F.3d at 333 (3d Cir. 2014); *Stolt-Nielsen*, 559 U.S. at 685 ("class-action arbitration changes the nature of arbitration"); *Concepcion*, 563 U.S. at 346-349 (the Court reiterated that the "changes brought about by the shift from bilateral arbitration to class-action arbitration are fundamental" and that "[a]rbitration is poorly suited to the higher stakes of class litigation.").

In *Reed Elsevier*, the court explained that "the question of whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide arbitration would 'forc[e] parties to arbitrate' not merely a single 'matter that they may well not have agreed to arbitrate[,]' but thousands of them." 734 F.3d at 598-599 (citation omitted). "Gateway questions are fundamental to the manner in which the parties will resolve their dispute – whereas subsidiary questions, by comparison, concern details. And whether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail." *Id.* at 598.

Respondents rely heavily on the plurality opinion in *Bazzle*. However, not only is *Bazzle* not binding on this issue, but any persuasive authority *Bazzle* may once have held has been diminished significantly by the Supreme Court's later decisions in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) and *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064 (2013).

In *Stolt-Nielsen*, the Supreme Court emphasized that "only the plurality" had opined that an arbitrator should decide whether the contract permits class arbitration. The Court unequivocally declared that "*Bazzle* did not establish the rule to be applied in deciding whether class arbitration is permitted. The decision in *Bazzle* left that question open . . . ." 559 U.S. at 680-681. In *Oxford Health,* the Supreme Court further limited the "persuasiveness" of the plurality's decision when it chided the defendant for consenting to allow the arbitrator to resolve the class arbitration issue and strongly suggested that a court should have decided it. "We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called 'question of arbitrability.' Those questions . . . are presumptively for courts to decide." 133 S. Ct. at 2068, n.2. *See also Opalinski*, 761 F.3d at 331 (noting that subsequent Supreme Court decisions "cast doubt on the *Bazzle* plurality's decision," because "'only the plurality' in *Bazzle* decided that an arbitrator should determine whether a contract permits classwide arbitration and in *Oxford Health* . . . the Court again stated that it 'has not yet decided whether the availability of class arbitration' is for a court or for an arbitrator to resolve."

(*citing Stolt-Nielsen*, 559 U.S. at 680)).

Consistent with the Supreme Court's pronouncements, the Third, the Sixth, and the Ninth Circuits have confronted this issue head on, and all concluded that determining the availability of classwide arbitration presents a gateway issue for judicial determination. *See Reed Elsevier*, 734 F.3d at 599 (holding that "the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise")(citations omitted); *see also, Opalinski*, 761 F.3d at 335 (holding that the question of classwide arbitration is a "gateway issue" for a court to decide); *Huffman*, 747 F.3d 391 (same as *Reed Elsevier*); *Eshagh*, 588 F. App'x at 704 (9th Cir 2014) ("contracting parties would likely have expected a court to have decided" gateway issue of whether class wide arbitration is permitted).[1]

The Southern District of New York has held that this is a gateway issue to be decided by the courts. *See, e.g., Anwar,* 950 F. Supp. 2d 633 (holding that a "gateway dispute," such as whether class arbitration is precluded due to the absence of such a provision in the arbitration agreement, is a "question of arbitrability for a court to decide."); *Chen-Oster*, 710 F.3d 483 (court decided the question of arbitrability where the arbitration agreement did not clearly and

[1] A litany of district courts have likewise followed the Supreme Court guidance and concluded that a judge – not an arbitrator – decides whether an arbitration agreement provides for classwide arbitration. *See Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633 (S.D.N.Y. 2013); *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 403-05 (S.D.N.Y. 2011) *rev'd sub nom. on other grounds, Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013); *Cobarruviaz v. Maplebear, Inc.*, No. 15-697, 2015 WL 6694112 (N.D. Cal. Nov. 3, 2015); *Thomas v. Right Choice Staffing Grp., LLC*, No. 15-10055, 2015 WL 4078173, at *7 (E.D. Mich. July 6, 2015); *Chesapeake Appalachia, LLC v. Suppa*, No. 14-159, 2015 WL 966326, *11 (N.D.W.Va. Mar. 4, 2015); *Torres v. CleanNet U.S.A., Inc.*, No. 14-2818, 2015 WL 500163 (E.D. Pa. Feb. 5, 2015); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, No. 14-0620, 2014 WL 7335045, *1 (M.D. Pa. Dec. 19, 2014); *Martinez v. Leslie's Poolmart, Inc.*, No. 14-1481, 2014 WL 5604974, at *3 (C.D. Cal. Nov. 3, 2014); *Chico v. Hilton Worldwide, Inc.*, No. 14-5750, 2014 WL 5088240, at *12 (C.D. Cal. Oct. 7, 2014); *Hickey v. Brinker Int'l Payroll Co.*, No. 13-0951, 2014 WL 622883, *4 (D. Col. Feb. 18, 2014); *Chassen v. Fid. Nat'l Fin., Inc.*, No. 09-291, 2014 WL 202763, at *6 (D.N.J. Jan. 7, 2014); *Corrigan v. Domestic Linen Supply Co.*, No. 12-0575, 2012 WL 2977262, at *4-5 (N.D. Ill. July 20, 2012); *Goodale v. George S. May Int'l, Co.*, No. 10-5733, 2011 WL 1337349, at *2 (ND. Ill. Apr. 5, 2011).

unmistakably delegate that question to the arbitrator); *Cohen v. UBS Fin. Servs., Inc.*, No. 14-781, 2012 WL 6041634, at *3 (S.D.N.Y. Dec. 4, 2012) *aff'd*, 799 F.3d 174 (2d Cir. 2015) (granting motion to compel individual arbitration). While Respondents attempt to diminish *Anwar* because the Court "never cited *Bazzle* or considerd the legal question of whether the availabilty of class arbitration is a 'gateway' issue" (*see* Opp. at 4), this characterization misses the mark. Shortly before *Anwar* was decided, the Supreme Court made clear that *Bazzle* does not stand for the proposition that the gateway issue of class arbitration is to be decided by an arbitrator. *See Stolt-Nielsen*, 559 U.S. at 680 ("Unfortunately, the opinions in *Bazzle* appear to have baffled the parties . . . the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration . . . In fact, however, only the plurality decided that question.") Clearly, the *Anwar* court was not "baffled" by *Bazzle*, and properly decided that a "gateway dispute," on the issue of class arbitration is a "question of arbitrability for a court to decide." 950 F. Supp. 2d at 639.

Respondents' attempts to distinguish the Southern District's decision in *Chen-Oster*, (*see* Opp. at 4), also fail. As the *Chen-Oster* court explained, a dispute is presumptively reserved for determination by courts, not arbitrators, if the "contracting parties would likely have expected a court to have decided the gateway matter." *Chen-Oster*, 785 F. Supp. 2d at 400 (*citing Howsam* 537 U.S. at 83). There, as in this case, "the arbitration agreement [did] not clearly and unmistakably delegate that question to the arbitrator." Whether class arbitration is precluded due to the absence of such a provision in the arbitration agreement requires "determination of the scope and enforceability of the arbitration clause" which are gateway questions for the courts to decide. *Id.*[2]

[2] Respondents misrepresent the holding in *In re A2P SMS Antitrust Litig.*, implying that the court was "convinced" that *Bazzle* provided persuasive authority. In fact, the court there certified the issue of whether *Bazzle* was controlling to the Second Circuit, because "there are compelling arguments contrary to its ruling that create a substantial ground for dispute." No. 12-2656, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015). Indeed, in the court's earlier decision, Judge Nathan specifically noted that the "availability of class arbitration is plausibly an issue that contracting (Footnote continued)

In this case, as in *Chen-Oster* and *Anwar*, there is no "clear and unmistakable evidence" that the parties intended the arbitrator to determine this gateway issue. *See Opalinski*, 761 F.3d at 335 ("clear and unmistakable evidence" is to be found only where there is "express contractual language unambiguously delegating the question of arbitrability to the arbitrator"). Because the Agreements lack any such "unambiguous delegation," the gateway issue is for this Court.[3]

**B. Respondents' Arbitration Agreements Do Not Authorize Class Arbitration.**

Class action arbitration is a fundamental change to the nature of arbitration, and may not be inferred solely from the fact that the parties have agreed to resolve their disputes through arbitration. *See, e.g., Stolt–Nielsen*, 559 U.S. at 684. Respondents argue the exact opposite. They assert that silence on the issue equates to acquiescence. (*See* Opp. at 6) ("nowhere do the Agreements bar or disaffirm the use of class procedures"). This argument must be rejected. Indeed, where the agreement is silent on the issue of class arbitration, courts cannot require a party to submit to arbitration of class claims. *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 554 (S.D.N.Y. 2011), *rev'd and remanded on other grounds*, 726 F.3d 290 (2d Cir. 2013) ("In accordance with *Stolt–Nielsen*, class arbitration may not be imposed on parties whose arbitration agreements are silent on the permissibility of class proceedings."); *Sanders v. Forex Capital Mkts., LLC*, No. 11-0864, 2011 U.S. Dist. LEXIS 137961 (S.D.N.Y. Nov. 29, 2011) (compelling individual arbitration where there was no provision in contract which contemplated class arbitration); *Corrigan*, 2012 WL 2977262, at *4-5 (rejecting class arbitration where the arbitration clause was silent as to class arbitration); *Hickey*, 2014 WL 622883 at *4 ("mere silence" on issue of class arbitration "cannot be read to require defendant to submit to arbitration

---

parties might expect a court to resolve, subject to standard appellate review, rather than risk undergoing the entirety of a high-stakes, high-cost arbitration that may differ from the proceeding contemplated by the parties." *In re A2P SMS*, 2014 WL 2445756, at *11.

[3] Respondents' reliance on *Edwards v. Macy's Inc.*, No. 14-8616, 2015 WL 4104718 (S.D.N.Y. June 30, 2015) is misplaced. There, the agreement was not silent on the issue of class arbitration – it explicitly allowed multiple parties to consolidate their claims. If the agreement were silent, Judge McMahon actually agreed that "a court can and should decide the issue." *Id.* at *11.

of class or collective action claims"); *Goodale*, 2011 WL 1337349 at *2 ("The Plaintiffs insist that the agreement's silence mandates that the Court allow the arbitrator to determine the arbitrability of the class claims. Supreme Court precedent, however, squarely forecloses the possibility that the class claims are arbitrable.").

Respondents reliance on out-of-circuit decisions made under the deferential standard of the FAA is misplaced. (*See* Opp. at 6-7.) In those cases, the parties submitted the question of class arbitration in the first instance to the arbitrators. Thus, when the case came to court, the courts simply applied the extremely deferential standard applicable to the review of arbitration decisions. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 127 (2d Cir. 2011) (parties are bound by decision "whether the arbitrator was right or wrong in her analysis"); *see also Rame, LLC v. Popovich*, 878 F. Supp. 2d 439 (S.D.N.Y 2012) (merely finding arbitrator did not exceed her authority or act in manifest disregard of the law); *DIRECTV, LLC v. Arndt*, 546 F. App'x 836 (11th Cir. 2013) (refusing to vacate award, even though "arbitrator's award may have been ugly, and could have been mistaken, incorrect, or in manifest disregard of the law"); *Long John Silver's Rests., Inc. v. Cole*, 514 F. 3d 345, 353 (4th Cir. 2008) (upholding arbitrator's award based on "extremely limited review"). *Cf. Oxford*, 133 S. Ct. at 268 (Court was merely tasked with reviewing the arbitral award to see if it even arguably interpreted the parties' contract – "however good, bad, or ugly" – but that it "would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called 'question of arbitrability.'")[4]

The Agreements at issue here lack any provisions authorizing class or collective action arbitration. To the contrary, they contain language confirming that the parties agreed to

[4] The Court went as far as to warn that "Nothing we say in this opinion should be taken to reflect any agreement with the arbitrator's contract interpretation, or any quarrel with Oxford's contrary reading. All we say is that convincing a court of an arbitrator's error—even his grave error—is not enough." *Id.* at 2070. Judges Alito and Thomas, in their concurring opinion, went even further, explaining "If we were reviewing the . . . interpretation . . . *de novo*, we would have little trouble concluding that he improperly inferred '[a]n implicit agreement to authorize class-action arbitration . . . form the fact of the parties' agreement to arbitrate.'" *Id.* at 2071.

arbitration on an individual, bilateral basis only. For example, they emphasize "[*y*]*ou* are agreeing to arbitrate any dispute, claim or controversy that may arise between *you* and *your firm* . . .," "[t]his means that *you* are giving up the right to sue in court . . .," "[n]othing in this Agreement prevents *you* from filing a charge . . . with. . .the EEOC," "*you* agree your claim will become subject to arbitration as noted," "*you* may not assign this Agreement," and "[t]his Agreement is binding on *you, your heirs, administrators and executors*. . ." Turnbull Decl. at Exs. A – C at ¶ 14 (emphasis added). This language indicates that each Respondent's Agreement only applies to disputes between that individual and the company. Cases from this District that have reviewed similar agreements – cases which Respondents ignore – have consistently found that such agreements do not allow for class arbitration. *See e.g., Fensterstock v. Educ. Fin. Partners*, 611 F.3d 124, 141 (2d Cir. 2010); *Anwar*, 950 F. Supp. 2d 633; *Chen-Oster*, 785 F. Supp. 2d at 403-05; *Sutherland*, 768 F. Supp. 2d at 554.

Respondents argue that Petitioner "must live by [the] terms" of the Agreements, yet they then attempt to support their argument by grafting the AAA Supplementary Rules for Class Arbitrations into the Agreements. As a threshold matter, the Supplementary Rules are not part of the Agreements. When the parties entered their Agreements in 2012 and 2013, they agreed that any individual arbitration would be conducted in accordance with the "American Arbitration Association's Securities Arbitration Rules, effective May 1, 1993" (the "1993 Rules"). Turnbull Decl. at Ex. G. Nowhere did the parties agree that they would then rely on the AAA Commercial Arbitration Rules or the Supplementary Rules, as Respondents now argue.

Furthermore, the Second Circuit has compelled individual arbitration where the arbitration agreement was deemed silent as to class arbitration, even though it required disputes to be "settled by arbitration [. . .] in accordance with . . . the [AAA] commercial arbitration rules." *Parisi*, 710 F.3d at 485. In *Huffman*, 2013 WL 5593234 at *29, the Court rejected a similar argument to that being pressed by Respondents, explaining that "[w]hile the AAA has also drafted Supplementary Rules for Class Arbitrations, these rules are mentioned nowhere in the parties' Arbitration Provision *or* in the Commercial Rules to which the parties *did* agree to

arbitrate. In fact, the court in *Reed Elsevier* expressly rejected the proposition that the parties agreed to class arbitration simply because they agreed to arbitrate under the AAA's Commercial Rules." S*ee also Lopez v. Ace Cash Express, Inc.*, No. 11-4611, 2012 WL 1655720, at *8 (C.D. Cal. May 4, 2012) (rejecting argument that because AAA National Rules were expressly incorporated, so too were the Supplementary Rules); *cf. Cobarruviaz*, 2015 WL 6694112 at *10 ("Absent invocation of JAMS Class Action Procedures, those rules do not come into play."). [5]

Unlike the decisions cited by Respondents (*see* Opp. at 10), there is no language in the parties' Agreements incorporating any AAA rules that empower the arbitrator to decide issues of arbitrability. Rather, the 1993 Rules merely say that "the authority and duties of the AAA are established in the *agreement of the parties* and in these rules, and may be carried out through such of the AAA's representatives as it may direct." Turnbull Decl. at Ex. G (emphasis added). The Respondents' Agreements do not include any suggestion – let alone clear, specific, and unequivocal evidence – that the parties intended to authorize arbitration on a class or collective action basis, or that the parties intended to incorporate any rules other than the 1993 Rules. To the contrary, the language of the Agreements repeatedly reflects the parties' intent to arbitrate *only* individual claims on a non-class and non-collective action basis.

[5] The inclusion of the AAA an alternate forum in the Agreements provides further evidence of the intent to individually arbitrate disputes, because it prevents parties from avoiding arbitration by simply including the words "class action" or "collective action," – as Respondents did here – since pursuant to FINRA Rules 13204 (a) and (b), FINRA will decline to administer arbitrations that contain class or collective action allegations. Respondents disingenuously assert that Wells Fargo is merely "speculating" as to why FINRA rejected their Statement of Claim. But Respondents know better. FINRA's July 28, 2015 letter to Respondents' counsel advised that their claims are not eligible for arbitration at FINRA pursuant to Rule 13204(a). (This letter is attached as Exhibit A to the Supplemental Declaration of Kenneth J. Turnbull in Further Support of Petitioner's Motion to Compel.) Furthermore, when Respondents filed at AAA, they explained they were doing so because "it is [Respondents'] understanding that FINRA will not accept this arbitration because it is a class action." (Supplemental Turnbull Decl. at Ex. B.).

### C. The *Williams* Action Is a Duplicative, First-Filed Action.

The "first filed" rule requires that, "[w]here there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (quoting *Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986)) (alteration in original). This rule is not merely a "claims-processing" rule as Respondents suggest, but rather it "embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal citations omitted). The claims alleged by Respondents – seeking pay for overtime hours allegedly worked – substantially overlap with the claims alleged in the earlier-filed *Williams* action – seeking pay for overtime hours allegedly worked – which has been pending in the Northern District of Illinois since March 2014. Therefore, dismissal or a stay of the arbitration under the first-filed rule is warranted. *See Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (The first-filed rule "does not require *identical* parties in the cases, but merely requires 'substantial overlap.'" (emphasis in original))

## III. CONCLUSION

For all of the reasons explained herein, and in Petitioner's Memorandum of Law, Petitioner respectfully requests that the Court dismiss, or in the alternative stay, the pending arbitration at AAA and issue an order compelling each Respondent to arbitrate his or her individual claims on a non-class and non-collective action basis. In the alternative, the arbitration must be dismissed or stayed under the first-filed rule. Finally, Petitioner requests that the Court award Petitioner such other and further relief as the Court may deem just and proper.

Dated:  November 17, 2015                    Respectfully submitted,

                              /s/ *Kenneth J. Turnbull*
                              Kenneth J. Turnbull
                              Ashley Hale
                              Morgan, Lewis & Bockius LLP
                              101 Park Avenue
                              New York, NY  10178
                              212.309.6000
                              212.309.6001 (fax)
                              kturnbull@morganlewis.com
                              ahale@morganlewis.com

                              *Attorneys for Defendant*
                              *Wells Fargo Financial Advisors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Petition to Dismiss or in the Alternative Stay the Pending Arbitration And Compel Individual Arbitration in Accordance with the Binding Arbitration Agreements and Supplemental Declaration of Kenneth J. Turnbull with Exhibits was electronically filed with the Court and served via its ECF/CM system, on November 17, 2015, upon the following:

Gregg I. Shavitz, Esq.
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida  33432
gshavitz@shavitzlaw.com

Justin M. Swartz
OUTTEN AND GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Tel: (212) 245-1000
Fax: (646) 509-2057

*Counsel for Respondents*

s/ *Kenneth J. Turnbull*
Kenneth J. Turnbull